***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission Affirms the Opinion and Award of Deputy Commissioner Rowell and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. An Employer/Employee relationship existed at the time of the incident.
2. Bridgestone/Firestone was the duly-qualified employer at the time of the incident.
3. The parties are subject to the North Carolina Workers' Compensation Act, and the Employer employed the requisite number of employees to be bound under the provisions of said Act at the time of the incident.
4. The Employer was self-insured at the time of the incident.
5. The parties agree on a maximum compensation rate of $654.00.
6. The alleged date of injury is June 20, 2002.
7. The Parties stipulated into evidence as Stipulated Exhibit No. 1, Pre-Trial Agreement.
8. The parties stipulated into evidence as Stipulated Exhibit 2, Industrial Commission forms and filings, medical records, job analysis, vocational rehabilitation notes or reports.
9. The parties stipulated into evidence as Stipulated Exhibit No. 3, deposition transcript of Dr. Gerald Vanden Bosch dated December 7, 2005.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was fifty-one years of age and was in his third semester of computer information technology classes. On June 20, 2002, Plaintiff was injured while working for Defendant when a one inch by one inch *Page 3 
steel bar, approximately five feet long fell from where it was leaning against a wall. On the date of injury, Plaintiff had been employed with Defendant-Employer for approximately 27 years.
2. Plaintiff was taken to the emergency room at Wilson Medical Center where Dr. Vanden Bosch was the on-call physician who repaired Plaintiff's injury and released Plaintiff that same day.
3. In the emergency room, Dr. Vanden Bosch cleaned out and sewed up the deep flap laceration, which was distally based and involved some of the muscle and covered the muscle fascia. Plaintiff was never hospitalized and no further surgical intervention was required.
4. Following plaintiff's treatment at the emergency room, Plaintiff participated in extensive physical therapy and continued follow-up care with Dr. Vanden Bosch for the next year. Dr. Vanden Bosch continued to provide medications for Plaintiff up to the time of his deposition, which was taken on January 29, 2009. Plaintiff's scar from his injury is approximately 6 inches long.
5. Plaintiff was released to full duty work on August 11, 2003. Dr. Vanden Bosch permanently restricted him from standing or walking more than two hours in a normal shift and no more than twenty minutes at a time. Plaintiff was taken out of work on the production floor due to the narcotic pain medication. While Plaintiff is taking narcotic pain medication, he is not permitted to work on the production floor. From July 2004 through June 2005 Plaintiff worked the Barcode Labeler job. Dr. Vanden Bosch took Plaintiff out of work in June 2005, based upon Plaintiff's complaints that he was not able to work rotating shifts due to his injury. Defendant reinstated Plaintiff's temporary total disability benefits in June 2005.
6. Dr. Carlton, a pain specialist with The Rehab Center in Charlotte, first examined Plaintiff on May 23, 2007 to determine whether he was a candidate for The Rehab Center. He *Page 4 
reviewed medical records at that time. Dr. Carlton's physical examination revealed no significant back problems, equal calf circumferences on both sides, normal even shoe wear pattern, normal gait, well-healed scar, diminished sensation in the area of the scar, mild tenderness of the Achilles tendon, no indications of CRPS, equal temperature feet, no Allodynia, no discoloration, good pulse, and full motion of the ankle, foot, and toes. Although Plaintiff had normal reflexes and was able to perform heel and toe walks, it caused some discomfort. Dr. Carlton determined that Plaintiff was a good candidate for The Rehab Center. Dr. Carlton opined that Plaintiff put forth a good effort at The Rehab Center working with a physical therapist, a psychologist, and the medical doctor. Plaintiff demonstrated good strength, good endurance, good flexibility, and was quite functional. Plaintiff was limited somewhat by continued pain but was able to lift fifty pounds on an occasional basis.
7. According to Kim Deal, Plaintiff's Case Manager, the Barcode Labeler position is a crucial component of the manufacturing process of tires. It is not make work. The essential functions of the job are to provide bar code labels for the tire rim area while maintaining the inventory, storage, printing and pre-staging of labels, printing mixed stock tags, tag order, inventory work and cleanup work as required, miscellaneous plant data entry, or clerical support duties as required or requested. It is a regularly scheduled job at Defendant's plant and available to the general labor market. Although Defendant generally reserves the position for its own employees with sedentary restrictions, any remaining vacancy would be filled by a public applicant without restrictions because it is an essential part of the manufacturing process.
8. The position is classified as predominantly sedentary and is classified as light work when the employee goes to the printer. The maximum weight lifting or pushing and pulling is ten pounds. There are no physical requirements of the job. Because the position is *Page 5 
crucial to the ongoing production at the plant, it cannot be a non-rotating position.
9. The parties and physicians agree that the Barcode Labeler position is suitable for Plaintiff during the Monday through Friday 8:00 a.m. to 4:00 p.m. shift.
10. The amount of pain medication required by Plaintiff to work an 8-hour shift does not change from the amount of pain medication taken on a regular, non-working day.
11. Plaintiff testified at hearing that the sole reason he alleges he cannot perform the Barcode Labeler job is because of the seven-day rotating schedule. Plaintiff testified that he could only work five days in a row rather than seven days because he needs a break from the pain after five days. When Plaintiff worked Monday through Friday in 2005, he spent his days off in the easy chair watching football or basketball and keeping his leg up. Plaintiff testified that he could not work the rotating schedule because it required him to work from four to twelve and the midnight shift. In doing so he was already up on the leg for several hours before going to work for the evening shift and the night shift. Plaintiff explained that in doing so, his leg was already hurting before the start of his shift as if he was at the end of a regular dayshift and that his pain medication intake would be more than doubled. However, Plaintiff admits that he is able to adjust his activity level based on his pain. Plaintiff stated that he needs to go to work first thing in the morning and complete his eight hour day shift. Based upon his pain level after his shift he is then able to determine what he is able to do that evening. Dr. Vanden Bosch opined that these issues, as stated to him by Plaintiff, are why he restricted Plaintiff to only the day shift for eight hours daily and that otherwise Plaintiff is able to perform the duties of the Barcode Labeler position.
12. Now that he is out of work, Plaintiff takes care of things including going to Wal-Mart, paying bills, getting the car serviced, and other normal things that people get done. His *Page 6 
neighbor cuts the grass, and Plaintiff does his own minimal housekeeping. Plaintiff goes to school and does homework in front of the computer. Plaintiff participates in all of these activities and takes four 10 mg Vicodin daily, the same medication he took to get through an eight-hour shift.
13. Based upon the greater weight of the credible evidence, the Full Commission finds that the Barcode Labeler position is suitable for Plaintiff on the rotating schedule. Plaintiff is unwilling to make accommodations within his personal life in order to perform his job on a rotating shift schedule, stating that he would not be physically able to do the job without neglecting everything in his everyday life.
14. Dr. Carlton opined that a rotating shift is more difficult for any individual to tolerate, but the injury itself would not preclude Plaintiff from rotating. On cross-examination, Dr. Carlton was asked again about the rotating shift and whether Plaintiff's disability rating of twelve percent would impact his ability to work a rotating shift. Dr. Carlton opined that there was no evidence of any emotional, psychosocial, anxiety, or sleep problems with Plaintiff and therefore the rotating shifts appeared to be something Plaintiff would be able to manage based on his twenty-day period of observation.
15. Both Dr. Carlton and Dr. Vanden Bosch approved Plaintiff for working an eight-hour day, five days a week. Dr. Vanden Bosch initially questioned Plaintiff's ability to work up to a twelve-hour shift two to three times a month. Regarding his restriction for 8:00 a.m. to 4:00 p.m. five days a week Dr. Vanden Bosch opined that as a patient advocate, he must rely on Plaintiff's statements regarding his ability to work the rotating shifts. However, upon further inquiry, Dr. Vanden Bosch opined that in a sit-down job where he works at a keyboard all day or a position where he could alternate sitting and standing, Plaintiff could certainly work a twelve-hour *Page 7 
shift and even a rotating shift.
16. The position of Barcode Labeler can accommodate Plaintiff's sitting and standing restrictions without difficulty. In an eight-hour shift, fifty to seventy-five percent of the job is sitting. Plaintiff was restricted in 2004 to no walking or standing for more than twenty minutes at a time and work no more than an eight-hour shift. In 2007, Dr. Carlton placed permanent restrictions of lifting fifty pounds occasionally, thirty-two pounds frequently, sitting tolerance sixty minutes, dynamic standing ninety minutes, and thirty-six minutes of walking.
17. Plaintiff has offered no evidence of any medical reason for his inability to work a rotating shift at the Barcode Labeler position. Dr. Vanden Bosch, Dr. Carlton, Ms. Deal, and Plaintiff all agree that Plaintiff's work injury does not prevent him from performing the Barcode Labeler job. Plaintiff's sole reason for his inability to work the job is the rotating shift. Plaintiff's reason for being unable to work the rotating shift is that it is not convenient to his lifestyle and that he lacks the self-discipline to pace himself throughout the day if he does not work first thing in the morning. Therefore, Plaintiff's inability perform the Barcode Labeler position is unrelated to his work injury. Defendant has offered Plaintiff suitable employment, within his restrictions and Plaintiff's unwillingness to return to work is unreasonable.
18. The position offered Plaintiff in February 2008, though carrying the same title, is not the same position Plaintiff previously performed in a trial return to work after his injury.
19. The Barcode Labeler job has changed since 2005. It is now a continuous operation with four crews, seven days a week to be consistent with the demand. The job currently has a steady workflow, rather than the heavy work on some days that was required when the position was only worked 8:00 a.m. to 4:00 p.m. Monday through Friday as Plaintiff described. There is no longer any required overtime, and if there were, this could be *Page 8 
accommodated for Plaintiff's restrictions.
20. The job analysis was given to both the treating physician, Dr. Vanden Bosch and to Dr. Carlton for review and both approved the job as within Plaintiff's restrictions prior to Plaintiff being asked to report for work in February 2008. It is the general business practice of Defendant that once the treating physician signs off on a job as within the restrictions, the employee is asked to return to work the following day, just as Plaintiff was requested to return to work the following day in February 2008.
21. Plaintiff's medical bills and all prescriptions have been paid for by Defendant and Plaintiff has received temporary total disability benefits consistently (with the exception of one week during which he was working with Defendant).
22. The Full Commission finds that the greater weight of the evidence does not support or corroborate Plaintiff's claim that the Barcode Labeler position offered to him was not suitable employment, and that his restrictions, based upon his June 20, 2002 compensable injury, prevent him from performing this job on a rotating shifts basis. The greater weight of the credible evidence shows that Plaintiff is capable of performing the Barcode Labeler position.
23. Plaintiff is entitled to continued medical treatment necessitated by his June 20, 2002 compensable injury by accident.
24. Defendant brought this hearing based upon reasonable grounds and Defendant's defense of this claim was not stubborn, unfounded litigiousness.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 9 
1. If an injured employee refuses employment procured for him, which is suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified. N.C. Gen. Stat. § 97-32. The Barcode Labeler job offered to Plaintiff is available on the regular market to other employees and is not make work. Peoples v. Cone Mills Corp.,316 N.C. 426, 342 S.E.2d 798 (1986).
2. The greater weight of the evidence proves that the position of Barcode Labeler is suitable employment for Plaintiff within his restrictions on a rotating shift schedule. Id. Therefore, Plaintiff's refusal of the Barcode Labeler position offered by Defendant was not justified. Id.
3. As Plaintiff has refused suitable employment, Plaintiff has failed to establish that he is entitled to further disability compensation. N.C. Gen. Stat. § 97-32.
4. Defendant brought this hearing based upon reasonable grounds and Plaintiff is not entitled to an award of attorney fees for Defendant bringing this hearing. N.C. Gen. Stat. § 97-88.1
5. Plaintiff is entitled to have Defendant pay for all medical expenses incurred or to be incurred, as a result of Plaintiff's compensable injury by accident on June 20, 2002, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, provide relief or tend to lessen the period of disability, when bills for the same have been approved in accordance with the provisions of the Act.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following: *Page 10 
 AWARD
1. Plaintiff's claim for additional disability compensation is DENIED. Plaintiff shall return to work in the Barcode Labeler position on a rotating schedule, which is suitable employment within his restrictions.
2. Plaintiff shall not recover an award of attorney fees in this matter.
3. Defendant shall pay all medical expenses incurred or to be incurred, as a result of Plaintiff's compensable injury by accident on June 20, 2002, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, provide relief or tend to lessen the period of disability, when bills for the same have been approved in accordance with the provisions of the Act.
4. Each side shall bear its own costs.
This the 14th day of January 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING: *Page 11 
 S/___________________ PAMELA T. YOUNG CHAIR *Page 12